IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-01982-RBJ

MAGPUL INDUSTRIES, CORP.,

    Plaintiff,

v.

BIG ROCK SPORTS, LLC,
*dba* SWAMP FOX COMBAT GEAR,

    Defendant.

## ORDER

    This case concerns alleged patent infringement on the part of Defendant Big Rock Sports, LLC, *dba* Swamp Fox Combat Gear ("Big Rock"). Subject matter jurisdiction is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). Defendant moves to dismiss this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) [Doc. #23]. For the reasons set forth below, the motion is denied.

### FACTS

    The background of this case is rather simple and straightforward. Since we are at the pleading stage, the Court considers true the plaintiff's factual assertions that are plausible on their face.

    Plaintiff Magpul is a Delaware corporation with its principal place of business in Erie, Colorado. Its business consists primarily of the design, manufacture, and sale of products used as accessories to firearms. Second Amended Complaint [ECF No. 21] at ¶ 1. Defendant Big

Rock is a Delaware corporation with its principal place of business in North Carolina. [ECF No. 23-1 at ¶ 5].

According to Magpul, Big Rock has been selling and offering to sell infringing ammunition magazines ("accused products") within Colorado and the greater United States without its consent. Big Rock has sold the accused products to Colorado residents under its name and/or the name "Swamp Fox" and has operated an interactive website used to conduct commercial activity, including the sale of the accused products to Colorado residents. Second Amended Complaint at ¶ 5.[1]

In 2011 a representative of Big Rock contacted Magpul to schedule a visit to Magpul's corporate offices and manufacturing facility. *Id.* at ¶ 6. Soon thereafter, representatives of Big Rock, including its Vice President of Merchandising and its Senior Vice President, traveled to Magpul's facilities in Colorado. *Id.* They met with a Magpul representative and discussed, among other things, the Magpul ammunition magazine whose patented technology is at issue in this case. *Id.* The Big Rock representatives also extensively toured Magpul's facilities, including its manufacturing plant, Research & Development department, and corporate offices. *Id.* Subsequently, Big Rock purchased thousands of the Magpul ammunition magazines embodying the patented technology at issue here, which were marked in conformance with the patent marking statute 3 U.S.C. § 287. *Id.* at ¶ 7.

After touring Magpul's facilities and ordering a large quantity of its ammunition magazines, Big Rock allegedly set out to obtain a competing ammunition magazine. *Id.* at ¶ 8.

---

[1] The website used to be found at http://www.swampfoxcombatgear.com but has been taken offline since some time after the filing of the Initial Complaint. [*See* Doc. #26 at n.3]. Big Rock insists that it only operates a passive website where news about the company and the industry is provided, found at http://www.bigrocksports.com. [Doc. #23-1 at ¶¶ 18–19]. However, Big Rock has not contested Magpul's assertion that the interactive website existed until recently, and even if it did not, the Court would be bound to accept the plaintiff's factual assertion as true.

Magpul contends that Big Rock infringed U.S. Patent No. 8,069,601 ("the '601 Patent"), entitled Ammunition Magazine, on December 6, 2011. *Id.* at ¶ 12. Then, on May 2, 2012, Big Rock allegedly infringed U.S. Patent 8,166,692 ("the '692 Patent"), entitled Self-Leveling Follower for Ammunition Magazine. *Id.* at ¶ 15. Big Rock uses a manufacturer in South Korea to create the accused products and then imports them into the United States. *Id.* at ¶ 8. It sells the products under the "Swamp Fox Combat Gear" name throughout the United States, including to residents of Colorado. *Id.*

According to Magpul, these actions amounted to intentionally tortious conduct expressly aimed at Magpul in Colorado and with knowledge that the main effect of the tortious actions would be felt by Magpul in Colorado. *Id.* at ¶ 9. Magpul seeks treble damages; an injunction; delivery of all infringing products for purposes of destruction, or in the alternative, royalties for the sale of those products; reasonable attorney's fees; and costs of suit. *Id.* at 4–5.

Big Rock contends that it is not subject to personal jurisdiction in the courts of Colorado, and that Colorado would be an improper forum to hear this case. However, Big Rock admits that it has shipped the accused products into Colorado. [Doc. #23-1 at ¶ 22]. To counterbalance this admission, Big Rock argues that because its shipments to Colorado have not been substantial—constituting approximately 0.065% of the total accused products it has sold, with a total of $531 in revenue—its contacts with the state are too minimal for the Court to exercise jurisdiction. In addition, it argues that defending an action in Colorado would constitute a substantial and unreasonable burden.

## ANALYSIS

### I. PERSONAL JURISDICTION

To establish personal jurisdiction over an out-of-state defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).  With respect to such issues as patent infringement, it is appropriate to look to the law of the Federal Circuit, "because the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).

Colorado's "long-arm" statute, C.R.S. § 13-1-124, has been interpreted to confer the maximum jurisdiction permitted by constitutional due process.  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Therefore, the Court need only determine whether exercise of jurisdiction over the defendant comports with due process.

"The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984).[2]  In order to exercise jurisdiction, the out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement*, 326 US. 310, 323 (1945).  In all, the defendant's contacts with the forum must be such that it is foreseeable that the defendant could "reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

---

[2] Because this action arises under the federal patent laws, the personal jurisdiction analysis occurs under the due process clause of the Fifth Amendment.  However, it tracks the analysis under the due process clause of the Fourteenth Amendment.  *See Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 427 n.2 (Fed. Cir. 1996).

4

Minimum contacts may be established in two ways. First, general personal jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state such that exercising personal jurisdiction is appropriate even if the cause of action does not arise out of those contacts. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). Second, specific personal jurisdiction exists where the cause of action is "related to" or "arises out of" the defendant's activities within the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414 (citation omitted). In such cases, the court may exercise jurisdiction "even if the defendant's contacts are isolated and sporadic." *Silent Drive*, 326 F.3d at 1200 (internal quotation marks omitted) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

The burden of proof is on the plaintiff to establish minimum contacts. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). Once minimum contacts are established, the burden shifts to the defendant to prove "the presence of other considerations that render the exercise of jurisdiction unreasonable." *Id.* Where a challenge to personal jurisdiction is raised early in the litigation, the plaintiff may meet its burden with a prima facie showing based on the pleadings. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). The Court accepts as true all well pleaded, non-conclusory facts alleged in the plaintiff's complaint, and all factual disputes are resolved in the plaintiff's favor. *Id.* Neither party contends that the Court can exercise general personal jurisdiction over Big Rock. Therefore, the Court will conduct its analysis to determine whether specific personal jurisdiction exists.

Magpul contends that Big Rock is subject to specific jurisdiction in Colorado for two reasons. First, Big Rock committed numerous acts in Colorado related to the alleged infringement, including selling the accused products to Colorado residents, visiting and touring the Magpul facilities, and purchasing large quantities of the patented magazines from Magpul.

In the alternative, it contends that Big Rock performed actions outside of Colorado—developing, offering for sale, and selling the accused product—that were expressly aimed at this forum, and that Big Rock knew or should have known would have an effect in this forum.

Focusing on the first argument, Big Rock admits that it has sold and shipped the accused products to Colorado residents. However, it argues that the shipments are *de minimis* and therefore the contact is attenuated. It further contends that the sales were unsolicited, and thus its presence in the forum arises from the unilateral acts of others. Finally, Big Rock argues that because a new law in Colorado bans the sale of such large magazines,[3] it will never have minimum contacts in the state sufficient to establish personal jurisdiction.

*Patent Infringement*

Pursuant to 35 U.S.C. § 271, the "tort" of patent infringement arises from the make, sale, or use of the patented item. *Dart Int'l, Inc. v. Interactive Target Sys., Inc.*, 877 F. Supp. 541, 545 (D. Colo. 1995). "The situs of the patent infringement occurs where the offending act is committed." *Id.* (citing *N. Am. Philips Corp. v. Am. Vending Sales*, 35 F.3d 1576 (Fed. Cir. 1994)). For infringement by sale, "[e]conomic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there." *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1243 (D. Colo. 2010) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994)). In effect, "the tortious injury caused by patent infringement occurs within the state where the allegedly infringing sales

---

[3] Colorado recently passed a law banning the possession or sale of the high capacity ammunition magazines at issue in this case. CRS §§ 18-12-301–302. The law went into effect on July 1, 2013. In particular, it states that it shall be a misdemeanor offense for a person to sell, transfer, or possess a high capacity ammunition magazine within the state of Colorado. CRS § 18-12-302(1)(a). The law also includes a number of exceptions, including for persons who already own large capacity magazines at the time the law goes into effect and who maintain continuous possession of those magazines. CRS § 18-12-302(2)(a).

are made." *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1318 (Fed. Cir. 2005).

The plaintiff has sufficiently pled that the "tort" of patent infringement occurred in Colorado when Big Rock sold and shipped the accused products to Colorado residents.

*Due Process*

The Colorado Long-Arm Statute provides that a person or entity who commits a tortious act within the state submits itself to the jurisdiction of the courts of the state for actions arising from that conduct. C.R.S. § 13-1-124. In *North American Philips*, the Federal Circuit Court found that placing the infringing product into the stream of commerce knowing that some the of the products were destined for Illinois weighed in favor of exercising jurisdiction there. 35 F.3d at 1580. The Court noted that "[s]urely the reasonable market participant in the modern commercial world has to expect to be haled into the courts of that state, however distant, to answer for any liability based at least in part on that importation." *Id.* The same is true here. And in this case, Big Rock did not simply place the infringing product into the stream of commerce, allowing it to arrive in Colorado by way of a distributor. Instead, Big Rock directly made sales to Colorado residents and shipped the accused products into Colorado.

The Federal Circuit has a three part test to determine if a district court may exercise specific personal jurisdiction over an out-of-state defendant: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed*, 249 F.3d at 1360 (citation omitted). Here, Big Rock purposefully directed its activities at residents of the forum when it sold and shipped the accused products into the state. The claim arises out of or relates to these activities, because

Magpul is alleging patent infringement, and infringement by sale occurred in Colorado, the situs where Big Rock sold those products. As noted above, even isolated and sporadic contacts are sufficient to constitute minimum contacts where the cause of action arises out of or is related to the activities of the defendant.

"Once the plaintiff establishes minimum contacts, the defendant is responsible for demonstrating 'the presence of other considerations that render the exercise of jurisdiction unreasonable.'" *Alcohol Monitoring*, 682 F. Supp. 2d at 1244–45 (citing *Inamed*, 249 F.3d at 1360). The Supreme Court has identified the following factors to be considered in this analysis: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 476–77. The burden is on the defendant to make a showing of unreasonableness.

Big Rock argues that jurisdiction over it would be unreasonable because its business is operated out of North Carolina, the cost of plane tickets and lodging for its representatives would be unreasonably burdensome, and any time its employees or officers spend away from North Carolina is time away from Big Rock's operations. Neither of these costs—financial or time—is an unreasonable burden going to traditional notions of fair play or substantial justice. Litigation is expensive. If the cost of flights and lodging made jurisdiction over out-of-state defendants unduly burdensome, no court could exercise jurisdiction over an out-of-state defendant. As to the decrease in work productivity, that is another unfortunate side effect of litigation, whether in or out of state.

Big Rock also claims that because of the new Colorado law banning the sale, transfer, and possession of high-capacity magazines, CRS § 18-12-301–302, its representatives would unduly open themselves up to criminal liability by carrying the accused products into Colorado for purposes of the litigation. The law might be "an ass" at times, but the notion that a manufacturer would be indicted for bringing to court an allegedly infringing product that it needs for its defense is pure nonsense. Nevertheless, if Big Rock truly thinks so little of the common sense of authorities in Colorado it is free to utilize photos, design drawings, and other data in lieu of bringing the actual magazines into the state.

Big Rock focuses solely on *its* burden should it be subject to suit in Colorado. But what of the burden on Magpul of litigating in North Carolina? While never dispositive, Colorado has an interest in providing its residents with a convenient forum to redress injuries and in discouraging injury within its borders. *See Alcohol Monitoring*, 682 F. Supp. 2d at 1248.

The Court finds that the defendant has not established that the exercise of jurisdiction in Colorado would be so unreasonable such that it would offend traditional notions of fair play and substantial justice. As such, the assertion of personal jurisdiction over Big Rock is "reasonable and fair" and exercising such jurisdiction does not offend due process.

## II. VENUE

A civil action for patent infringement "may be brought in the judicial district where the defendant resides." 28 U.S.C. § 1400. A corporate defendant is deemed to reside in any district in which it is subject to personal jurisdiction. 29 U.S.C. § 1391(c)(2); *see also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). Because Big Rock is subject to personal jurisdiction in this Court, venue also lies here. *See N. Am. Philips*, 35 F.3d at

1577 ("The venue issue is subsumed in the personal jurisdiction issue. Venue lies ipso facto if we hold, as we do, that the district court has personal jurisdiction over [the defendant].").

## ORDER

For the foregoing reasons, Defendant Big Rock's Motion to Dismiss [Doc. #23] is DENIED. The Court directs the parties to contact chambers and set a scheduling conference within fourteen (14) days of this filing.

DATED this 11th day of April, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge